**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TODD KNITTLE, | : | CIVIL NO.: 1:20-CV-00945 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

Todd Knittle ("Knittle") seeks judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying his claim for

Supplemental Security Income ("SSI") under the Social Security Act.  We have

jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Because the

---

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision is supported by substantial evidence, the court will affirm the Commissioner's decision.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1* to *12-10*.[2]  On July 6, 2017, Knittle filed an application for Social Security disability benefits, alleging disability beginning February 23, 2017. *Admin Tr.* at 10.  His claim was denied on October 13, 2017. *Id.*  On November 10, 2017, Knittle filed a written request for a hearing, which was held on December 4, 2018.  *Id.*

On January 30, 2019, Administrative Law Judge Jarrod Tranguch ("ALJ") determined that Knittle had not been disabled within the meaning of the Social Security Act from February 23, 2017 through the date of the decision. *Id*. at 21. And so, he denied him benefits. *Id*.   Knittle appealed the ALJ's decision to the Appeals Council, which denied his request for review on April 6, 2020. *Doc. 1* at 2.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On June 11, 2020, Knittle began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence. *Doc. 1*

---

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Knittle' claims.

at 2.  Knittle requests that the court find that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* at 3.  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 11-12.*  The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 14.*  The parties then filed briefs, *see docs. 16, 17*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Knittle is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe

impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Knittle's Claim.**

On January 30, 2019, the ALJ denied Knittle's claim for benefits. *Admin. Tr.* at 21. At step one of the sequential-evaluation process, the ALJ found that Knittle had not engaged in substantial gainful activity since February 23, 2017, the alleged onset date. *Id*. at 12. At step two of the sequential-evaluation process, the ALJ found that Knittle had the following severe impairments: degenerative disc disease of the lumbar spine, and status-post three surgeries. *Id* at 13.

At step three of the sequential-evaluation process, the ALJ found that Knittle did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id* at 14. Specifically, the ALJ discussed Listing 1.04 and that "[t]he medical evidence does not include evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis as required under Listing 1.04." *Id*.

The ALJ then determined that Knittle has the RFC to perform light work[3] with some limitations. *Id*. The ALJ found that Knittle is limited to only occasional

---

[3] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

use of his lower extremities for pushing and pulling and "limited to no more than occasional balancing, stooping, kneeling, crouching, use of ramps, or climbing of stair, but would need to avoid crawling and climbing on ladders, ropes, or scaffolds." *Id*. Additionally, the ALJ found that Knittle can tolerate occasional exposure to slippery conditions and vibrations and that he should avoid unprotected heights and dangerous moving machinery. *Id*. In making this RFC assessment, the ALJ considered Knittle's symptoms that could be accepted as consistent with the record evidence, the medical opinions, and the prior administrative medical findings. *Id*. at 14-15.

At step four of the sequential-evaluation process, the ALJ found that Knittle was not capable of performing past relevant work. *Id*. at 19. At step five of the sequential-evaluation process, considering Knittle's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—office helper, hand assembler, and packager—that exist in significant numbers in the national economy that Knittle could perform. *Id* at 20. In sum, the ALJ concluded that Knittle was not disabled from February 23, 2017, through the date of his decision on January 30, 2019. *Id*. at 24. Thus, the ALJ denied Knittle SSI benefits. *Id*. at 21.

---

limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

**V. Discussion.**

Knittle argues that the ALJ's RFC findings are not supported by substantial evidence because the ALJ failed to discuss or explain evidence from Knittle's former employer regarding Knittle's excessive absentee rate.  Additionally, Knittle contends that the ALJ erred in evaluating the medical opinion evidence of record, specifically regarding the opinions of Knittle's primary care physician, Dr. Anderson, and the opinion of the functional capacity evaluator, Michael Ferder ("Mr. Ferder").

Because Knittle's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Knittle's, filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021).  Under the old regulations, "ALJs were

required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). And as to consistency, those regulations

11

provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

## A. The ALJ's evaluation of Knittle's RFC is based on substantial evidence.

Knittle contends that the ALJ's evaluation of Knittle's RFC is not based on substantial evidence because the ALJ did not discuss or explain Knittle's excessive absentee rate at his previous job.  Knittle argues that had the ALJ properly considered and discussed Knittle's excessive absentee rate at his previous job, the ALJ would have found Knittle incapable of full-time employment.  Therefore, according to Knittle, substantial evidence does not support a finding that Knittle

can maintain full-time employment.  To support his argument, Knittle cites to *Hess v. Colvin*, where the court held that the ALJ erred in failing to discuss or explain his reasons for rejecting an employer statement regarding excessive absenteeism and remanded the matter. *Hess v. Colvin*, No. 3:12-CV-1907, 2014 WL 901144 (M.D. Pa. Mar. 7, 2014).

Knittle's reliance on *Hess* is misplaced, as the court in *Hess* found the ALJ erred because he did not mention a statement from the former employer which acknowledged Hess' excessive absentee rate and the ALJ did not include the statement on the exhibit list. *Id*. at *10.  Here, the record is clear that the ALJ did not ignore Knittle's excessive absentee rate at his previous job.  Indeed, the ALJ specifically discussed Knittle's employment records which indicated he did not work between February and mid-May 2017. *Admin. Tr.* at 12.  The ALJ also noted that Knittle testified that he resigned due to his impairments. *Id.*  Additionally, the ALJ noted that Knittle was terminated because of his inability to continue to perform the job. *Id.*  The ALJ also included Knittle's previous employer's documents that noted his absentee rate into the exhibit list. *Id*. at 22.

Beyond the meaningful factual distinctions between *Hess* and the present matter, the regulations have changed since *Hess* was decided, specifically, how an ALJ considers the opinions of nonmedical sources. *See* 20 C.F.R. § 404.1527(f). The new regulations state that "[w]e are not required to articulate how we

13

considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d).  Yet, "[w]hile the new rules relieve ALJs from the burden of articulating their consideration of nonmedical source statements using the same standards that apply to medical opinions and prior administrative medical findings. . .that does not constitute permission to ignore relevant evidence." *Fisher v. Comm'r of Soc. Sec.*, No. 20-CV-1467, 2021 WL 4288313, at *5 (W.D. Pa. Sept. 21, 2021).

Here, the ALJ did not ignore the evidence of Knittle's excessive absentee rate at his previous job.  Instead, he discussed the evidence and included the employer's documents in his exhibit list. *Admin. Tr.* at 12, 22.  Moreover, Knittle's excessive absentee rate was for a job that was considered a heavy exertion occupation. *Id*. at 19.  The ALJ explicitly found that Knittle could not perform heavy work and limited him to light exertion occupations. *Id*. at 14.  Excessive absenteeism in a heavy exertion occupation does not inherently equate to excessive absenteeism in a light exertion occupation. *See Allen v. Colvin*, No. 11-CV-3094, WL 5539433, at *4 (E.D. Wash. Oct. 8, 2013) (finding that an ALJ properly interpreted a doctor's statement that a claimant who was excessively absent in a heavy exertion occupation would not be excessively absent in a light exertion occupation).

Knittle notes that the vocational expert testified at the hearing that no jobs exist for an individual who cannot consistently work for eight hours more than three times per week and is absent from work at least two days per month on an unscheduled basis. *Admin. Tr.* at 121.  But Knittle fails to prove that his excessive absentee rate from his previous heavy exertion occupation would have been the same in a light exertion occupation.  Additionally, "[s]imply because a hypothetical was posed does not mean that there was sufficient evidence to support it; the ALJ ultimately relies upon only credible, medically established limitations." *Menuto v. Astrue*, No. 11-CV-246, 2012 WL 2594339, at *9 (W.D. Pa. June 13, 2012).  Because the ALJ did not err in considering and addressing Knittle's excessive absentee rate at his previous job when assessing Knittle's RFC, the ALJ's RFC assessment of Knittle is based on substantial evidence.

### B. The ALJ's evaluation of Dr. Anderson and Mr. Ferder's statements is based on substantial evidence.

According to Knittle, the ALJ failed to consider Dr. Anderson and Knittle's treatment relationship, including the length of the relationship and the frequency of examinations.  Knittle argues that the ALJ only addressed Dr. Anderson's remark regarding the ultimate opinion on disability and that the ALJ was required to provide an analysis of Dr. Anderson's other statements.  We find that the ALJ's evaluation of Dr. Anderson's statements is based on substantial evidence.

15

The ALJ noted that Dr. Anderson submitted a report which indicated that Knittle is unable to work. *Admin. Tr.* at 18 (citing *Admin. Tr.* at 400-401). The ALJ reiterated that the issue of disability is reserved to the Commissioner and that Dr. Anderson's statements were just recitations of Knittle's treatment history and complaints and not a function-by-function analysis of Knittle's physical limitations. *Id*. Per the new regulations, the ALJ was correct in finding that Dr. Anderson's statements did not qualify as a medical opinion. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities." 20 C.F.R. § 404.1513(a)(2).

Dr. Anderson's report advises that Knittle is disabled and unable to work; however, Dr. Anderson fails to provide a function-by-function analysis and does not opine about what Knittle can still do despite his impairments. *Admin.* 400-401. Accordingly, Dr. Anderson's report regarding Knittle's impairments is not a medical opinion. An ALJ is not required to evaluate the persuasiveness of a report that does not fall within the scope of 20 C.F.R. § 416.920c. *See Swank v. Saul*, No. 2:19-CV-1484, 2021 WL 1143608, at *5 (W.D. Pa. Mar. 25, 2021) (finding that a doctor's treatment notes did not constitute a medical opinion, and thus, the ALJ was not required to evaluate the persuasiveness of the treatment notes). Therefore,

the ALJ was not required to analyze Dr. Anderson's report, and thus, his evaluation of Dr. Anderson's report is based on substantial evidence.

Knittle also argues that the ALJ erred in assessing the opinion of Mr. Ferder. Specifically, Knittle contends that the ALJ improperly found Mr. Ferder's report less than persuasive because the ALJ noted that Knittle was referred to the evaluation by Knittle's counsel. Knittle also contends that the ALJ did not indicate that he considered other factors set forth under 20 C.F.R. § 404.1520c as it relates to Mr. Ferder's report. Additionally, Knittle argues that the ALJ erred in his finding that Mr. Ferder's report was inconsistent with the record.

As the Commissioner correctly points out, Mr. Ferder is not a medical source who could submit a medical opinion.[4] *See James v. Astrue*, No. 2:08-CV-445, 2009 WL 3063332, at *6 (M.D. Ala. Sept. 22, 2009). (finding that a functional capacity evaluator did not qualify as an acceptable medical source). As previously discussed, an ALJ is not required to articulate how they considered evidence from a nonmedical source using the requirement in paragraphs § 404.1520c(a)-(c). 20 C.F.R. § 404.1520c(d). Even so, the ALJ did address Mr. Ferder's report and found that it was "not supported by or consistent with the other objective evidence of record." *Admin. Tr.* at 18. The ALJ specifically noted that

---

[4] "Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d).

Mr. Ferder's report conflicted with Knittle's examination findings regarding his gait, retainment of sensation, negative straight leg raise tests, and Knittle's limited and conservative treatment since the alleged onset disability date. *Id*.  Additionally, the ALJ did not err in considering that Knittle was referred to Mr. Ferder by Knittle's own counsel.  Under the new regulations, a factor which the ALJ should consider is "[t]he purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s)."20 C.F.R. § 404.1520c(b)(1)(c)(3)(iii).

Knittle argues that that the ALJ erred in finding that Mr. Ferder's report conflicted with the record.  Specifically, Knittle contends that the ALJ's characterization of Knittle's examination findings as "benign" contradicts Knittle's history of three back surgeries and that Knittle's treatment has "essentially plateaued." *Doc. 16* at 11.  In his opinion, the ALJ addressed Knittle's surgical history "on his spine, and the more recent generally conservative and sporadic continuing treatment." *Admin. Tr.* at 17.  The ALJ also considered the record evidence which revealed "limited and conservative treatment history since the alleged onset date." *Id*. at 18.  Indeed, on February 24, 2017, Knittle reported 90% relief after his operation. *Id*. at 317.  Accordingly, we find that the ALJ provided enough discussion to allow for meaningful judicial review.

In sum, the ALJ provided adequate justification for his evaluation of Mr. Ferder's report.  It is the right and responsibility of the ALJ to make such assessments, and we find that substantial evidence supported the ALJ's decision. "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.  Knittle's argument simply asks the court to reweigh the evidence, which we cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ).  Because we are not permitted to reweigh the evidence, we conclude that the ALJ did not err in his consideration of Mr. Ferder's report.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Knittle.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge